IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS K. GIPSON, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4820-L (BH) |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY *as Trustee for Morgan Stanley* | § | |
| *Ixis Real Estate Capital Trust 2006-1,* | § | |
| *Mortgage Pass Through Certificates, Series* | § | |
| *2006-1, et al.,* | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated December 12, 2013, this case was referred for

pretrial management. Before the Court is *Defendant Barrett Daffin Frappier Turner & Engel,*

*LLP's Second Motion to Dismiss and Brief in Support*, filed May 2, 2014 (doc. 26). Based on

the relevant filings and applicable law, the defendant's motion to dismiss should be **GRANTED.**

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 909 Knollwood

Drive, Desoto, Texas 75115 (the Property). (*See* Orig. Compl. (doc. 1-2) at 11.)[1] On November 27,

2013, Thomas K. Gipson (Plaintiff) filed this *pro se* lawsuit against Deutsche Bank National Trust

Company, as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-1, Mortgage Pass

Through Certificates, Series 2006-1 (Deutsche Trust Co.); Mortgage Electronic Registration

Systems, Inc. (MERS); Wells Fargo Bank, N.A. (WFB); Barrett, Daffin, Frappier, Turner & Engel,

LLP (BDFTE); First NLC Financial Services, LLC (First NLC); and Deutsche National Bank

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(Deutsche )[2] in state court.  (*See id*. at 9–37.)[3]  That same day, the state court issued a temporary restraining order to restrain all defendants from executing a foreclosure sale and forcibly removing Plaintiff from the Property.  (doc. 1-3 at 5-7.)

Plaintiff claims that he is the "rightful owner" of the Property and is currently in possession of it.  (*Id*. at 3.)  He contends that he executed a promissory note dated December 20, 2005 for a loan from NLC in the original principal amount of $97,600.  (*Id*. at 4.)  According to Plaintiff, the interest rate of the loan was 9%, and his monthly payment was $849.31.  (*Id*.)

He alleges that on or about January 15, 2006, ASC, as servicer for WFB, falsely informed him that it had acquired his mortgage.  (*Id*.)  In detrimental reliance on the "false claim," he made loan payments to ASC from February 1, 2006 until April 1, 2012.  (*Id*.)  In early 2012, he made several verbal requests to ASC and WFB for a certified copy of the original promissory note and deed of trust to confirm that ASC and WFB had properly acquired the mortgage from NLC.  (*Id*.)  Plaintiff claims that because ASC and WFB failed to produce the requested documents, he searched for the documents himself but could not find evidence that NLC conveyed the mortgage to ASC or WFB.  (*Id*.)  He alleges there are no lawfully recorded assignments of his mortgage in the Dallas County Clerk's office, and there is no evidence on the Edgar database for the Securities Exchange Commission (SEC) that "Defendants" possess a securitized mortgage, or that Deutsche Trust Co. is currently a legally existing trust or was one at the time of the "unlawful conveyance."  (*Id*.)

---

[2]   Although "America's Servicing Company" (ASC) is also listed as a defendant, it is a division of WFB and not a separate legal entity.  (*See* doc. 14 at 11.)

[3]   In July 2013, "Defendants" filed suit in the 95th District Court to obtain an order to foreclose on the Property.  (*Id.* at 6.)  On October 23, 2013, "Defendants" received a judgment to foreclose.  (*Id.*)  In November 2013, Plaintiff received a Notice of Substitute Trustee's Sale stating that the property was scheduled for a foreclosure sale on December 3, 2013.  (*Id.*)

Plaintiff contends that he verbally informed ASC and WFB that he would no longer remit any more payments until they provided him with proper evidence of WFB or Deutsche's ownership of his mortgage.  (*Id*. at 5.)  He sent at least two Qualified Written Requests (QWRs) to "Defendants" in early June 2012 in accordance with the Real Estate Settlement & Procedures Act (RESPA) "in an attempt to receive proof that they had lawfully acquired the mortgage from" NLC. (*Id*.)  "Defendants" did send him documents in response to the QWRs, but the documents were not the requested certified copies of the note and deed of trust.  (*Id*.)

According to Plaintiff, shortly after he sent the QWRs, "Defendants" executed and recorded a fraudulent assignment of the mortgage with the Dallas County Clerk's office.  (*Id*.)  He contends that the "fraudulent recording" occurred more than six years after "the Defendant[]s" claimed to have acquired his mortgage.  (*Id*.)  He retained the services of Certified Forensic Loan Auditors, LLC, to conduct a property securitization analysis on the Property.  (*See id*. at 35-73.)  On February 26, 2014, the company prepared a property securitization analysis report that recommended "immediate rescission of document for rightful foreclosure to proceed; and production and review of all purchase documents and then notarized note endorsements among all relevant parties."  (*Id*. at 35, 73.)  Plaintiff contends that he obtained legal counsel to ascertain whether WFB legally acquired his mortgage, but "Defendants" never provided the original note, deed of trust, and assignment of mortgage despite several attempts by his counsel to obtain them.  (*Id*. at 5-6.)

The amended complaint expressly lists claims against NLC and WFB for predatory lending and violations of the Home Ownership and Equity Protection Act (HOEPA), and against all defendants for fraud, breach of contract, mail fraud, conspiracy, racketeering, unjust enrichment, slander of title, defamation, harassment, unreasonable collection efforts, malicious

prosecution, perjury, income tax evasion, and violations of RESPA, the Texas Property Code,

the Texas Business and Commerce Code, the Texas Debt Collection Practices Act (TDCPA), the

Racketeer Influenced and Corrupt Organizations Act (RICO), the Federal Debt Collection

Practices Act (FDCPA), and the Securities and Exchange Act (SEA).  (*Id.* at 6-23.)  Liberally

construed, the amended complaint also asserts claims for wrongful foreclosure, and violations of

the Equal Credit Opportunity Act (ECOA) and the Truth in Lending Act (TILA).  (*Id.* at 6-9, 14-

15.)  Plaintiff seeks actual, exemplary, treble, and statutory damages, declaratory relief,

rescission of his loan, termination of the security interest in the Property, forfeiture of loan

proceeds, an accounting, attorney's fees and costs, and injunctive relief to restrain WFB and

Deutsche Trust Co. from selling, attempting to sell, or evicting him from, the Property.  (*Id*. at 8-

10, 13-14, 23-24, 27-29.)

On December 10, 2013, WFB removed the action to federal court based on federal

question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.

(doc. 1.)  BDFTE filed a motion to dismiss this action against it on December 23, 2014.  (doc. 9.)

Deutsche Trust Co., WFB, and MERS also moved to dismiss on January 17, 2014.  (doc. 14.)

After being granted leave, Plaintiff filed a first amended complaint on May 1, 2014, and the two

motions to dismiss were deemed moot.  (docs. 24, 25.)  On May 2, 2014, BDFTE moved to

dismiss the amended complaint for failure to state a claim.  (doc. 26.)  With a timely-filed

response (doc. 30) and a timely-filed reply (doc. 31), the motion is now ripe for

recommendation.

### III.  MOTION TO DISMISS

BDFTE moves to dismiss Plaintiff's claims against it under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim on grounds that the claims are barred by the doctrine of qualified immunity.  (doc. 26 at 5-8.)

## A.  Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The plaintiff's pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725.  Attachments falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached to his amended complaint a copy of what he contends is a Property Securitization Analysis Report. This document is therefore considered part of the pleadings, and consideration of it does not require conversion of BDFTE's motion to dismiss into a motion for summary judgment. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## B.      Qualified Immunity

BDFTE contends that Plaintiff's claims against it fail as a matter of law because they are barred by the doctrine of qualified immunity.[4]   (doc. 26 at 5.)

"Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client." *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-699-CV, 2008 WL 2938823, at *2 (Tex. App.–Austin July 29, 2008, no pet.); *accord Rojas v. Wells Fargo Bank, N.A.,* 571 Fed. App'x 274, 278 (5th Cir. 2014); *Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4092590, at *2 (E.D. Tex. Aug. 16, 2012),*report adopted*, 2012 WL 4092516 (E.D. Tex. Sept. 12, 2012). The application of qualified immunity to attorneys is premised on the public's interest in "loyal, faithful and aggressive representation by the legal profession."  *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.–Houston [1st Dist.] 1994, writ denied) (quoting *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App.–El Paso 1988, writ denied); *see Reagan Nat'l*, 2008 WL 2938823, at *2.  This ensures that an attorney "has the right to interpose any defense or supposed defense and make use of any right [on] behalf of such client or clients as [he] deemed proper and necessary, without making himself subject to liability in damages" in fulfilling the duty to "zealously represent his clients

---

[4]  BDFTE also argues that the amended complaint fails to state a claim against BDFTE because it is devoid of any factual allegations concerning BDFTE at all.  (doc. 26 at 4-5.)  Because Plaintiff's claims against BDFTE are otherwise dismissed, it is unnecessary to reach this argument.

within the bounds of the law." *Reagan Nat'l*, 2008 WL 2938823, at *2; *Bradt,* 892 S.W.2d at 71. The doctrine is focused "on the kind of conduct engaged in, not whether the conduct was meritorious in the context of the underlying suit." *Bradt,* 892 S.W.2d at 72. [T]he dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D.Tex. 1996). "Representing a mortgage company and filing a foreclosure action against homeowners who have defaulted on their loan is clearly the kind of 'conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit.'" *Smith v. Nat'l City Mortg.*, No. A-09-cv-881 LY, 2010 WL 3338537, at *4 (W.D.Tex. Aug. 23, 2010) (quoting *Bradt,* 892 S.W.2d at 72).

Here, Plaintiff has asserted several claims against BDFTE in conjunction with the other defendants. He fails to allege any specific facts against BDFTE, however, and none of the facts listed in the factual section of the amended complaint appear to implicate BDFTE. Significantly, the amended complaint alleges no facts suggesting that BDFTE engaged in any activities outside of its representation of WFB or outside of the foreclosure proceedings. Accordingly, the amended complaint may be liberally construed as asserting claims against BDFTE in its capacity as foreclosure counsel.[5]

Representing a mortgagee by initiating foreclosure proceedings and filing a foreclosure action against a defaulting homeowner clearly falls within the scope of an attorney's duties in representing his client. *See Smith*, 2010 WL 3338537, at *4. Accordingly, Plaintiff's claims against BDFTE are barred by the doctrine of qualified immunity. *See Rojas,* 571 Fed. App'x at 278

---

[5]  Plaintiff's statements in his original complaint and response are consistent with this construction. (*See* doc. 1-2 at 36 (referring to BDFTE as "foreclosing attorney"); doc. 30 at 2-3 (arguing that BDFTE is not barred from suit by the doctrine of qualified immunity despite its status as counsel for WFB because it had knowledge of WFB's fraudulent documents)).

(finding attorneys are generally immune from suits brought against them if the action arises out of the duties involved in representing a client and that "BDFTE has immunity for its acts as foreclosure counsel"); *Iqbal v. Bank of America*, 559 Fed. App'x 363, 365 (5th Cir. 2014) (finding BDFTE qualified for attorney immunity because it was retained to assist in the foreclosure and the actions complained of by the plaintiffs were in the scope of its representation); *Lassberg v. Barrett Daffin Frappier Turnere & Engel, L.L.P.*, No. 4:13-cv-577, 2014 WL 2446173 (E.D. Tex. May 30, 2014) (finding BDFTE was protected by the doctrine of qualified immunity where it was acting in its role as the law firm hired to conduct foreclosure proceedings and acted merely as the representative and/or agent of the defendant bank); *Van Hauen*, 2012 WL 4092590 at *1-3 (finding defendant attorney was immune from suit where its only role in the facts supporting Plaintiff's allegations is that it was acting as the substitute trustee and legal counsel for a scheduled foreclosure sale). BDFTE's motion to dismiss Plaintiff's claims against it based on the doctrine of qualified immunity should be granted.

## C.    Fraud Exception

In his response to the motion to dismiss, Plaintiff alleges for the first time that BDFTE brought foreclosure proceedings against the Property even though it knew that documents in its possession were fraudulent, that it knew WFB did not give it sufficient documents to proceed with foreclosure, and that it knew that WFB did not legally obtain a mortgage on the Property.  (doc. 30 at 1-3.)  He argues that due to BDFTE's knowledge of the fraudulent documents, it is not barred by the doctrine of qualified immunity because attorneys do not have immunity for fraudulent and malicious conduct.  (*Id.*)

"Texas courts have recognized an exception to the privilege when an attorney knowingly

commits a fraudulent act outside the scope of his legal representation of a client." *Reagan Nat'l*, 2008 WL 2938823, at *3. *Id.* This type of action is foreign to his duties as an attorney, and he cannot shield himself from liability simply because he is an agent of his client. *Id.*

Plaintiff's new fraud allegations in his response are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, * 4 n. 3(N.D. Tex. Aug. 15, 2014); *see also Cutrera v. Board of Supervisors,* 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990). He has not sought or been granted leave to amend his petition to add these allegations, and he has not shown that BDFTE consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend his complaint. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

Even if liberally construed as an amendment to his complaint, Plaintiff's conclusory fraud allegations are not sufficient to state a plausible claim that the fraud exception to the qualified immunity privilege is applicable. Although he claims that BDFTE knew that its clients' documents were fraudulent but proceeded with the foreclosure anyway, he identifies no facts to support his allegation regarding BDFTE's knowledge. Moreover, he has identified no facts to support a plausible claim that the documents were fraudulent. Without more, his conclusory allegations are

insufficient to invoke the fraud exception to the attorney qualified immunity doctrine.

### D.     New Fraud Claim

Nor are Plaintiff's new fraud allegations sufficiently particular to state a stand-alone fraud claim under Fed.R.Civ. P. 9(b).  "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Given his conclusory and factually unsupported allegations, Plaintiff has failed to meet the heightened pleading requirements of Rule 9(b) for any new fraud claim. Specifically, he has failed to lay out "the who, what, when, where, and how." *Benchmark Electronics*, 343 F.3d at 724. Also, Plaintiff repeatedly claims that BDFTE knew that its clients' documents were fraudulent but proceeded with the foreclosure anyway, but he alleges no facts to support his conclusion that BDFTE had knowledge. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)...The plaintiffs must set forth *specific* facts supporting an inference of fraud[,]...such as identify[ing] circumstances that indicate conscious behavior on the part of the defendants." (citations omitted)(emphasis in original). Any new fraud claim is also subject to dismissal for failure to state a claim.

### III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, a court may appropriately dismiss an

12

action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended his complaint once, and his new allegations against BDFTE in his response have been considered, but he still fails to overcome the application of qualified immunity.  Accordingly, he has alleged his best case, and no further opportunity to amend his claims against BDFTE is warranted.

## IV.  RECOMMENDATION

BDFTE's motion to dismiss should be **GRANTED**, and all of Plaintiff's claims against it should be dismissed with prejudice.

**SO RECOMMENDED** on this 18th day of December, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE