IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS K. GIPSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4820-L (BH) |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY *as Trustee for Morgan Stanley* | § | |
| *Ixis Real Estate Capital Trust 2006-1,* | § | |
| *Mortgage Pass Through Certificates, Series* | § | |
| *2006-1, et al.,* | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated December 12, 2013, this case was referred for pretrial management. Before the Court is *Plaintiffs' Motion for Summary Judgment and Request for Hearing*, filed April 3, 2015 (doc. 63) and *Moving Defendants' First Amended/Supplemental Motion to Dismiss Plaintiff's Third Amended Petition and Brief in Support Thereof*, filed April 13, 2015 (doc. 68). Based on the relevant filings and applicable law, the moving defendants' motion to dismiss should be **GRANTED,** and the plaintiff's motion for summary judgment should be **DENIED as moot**.

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 909 Knollwood Drive, Desoto, Texas 75115 (the Property). (*See* Orig. Compl. (doc. 1-2) at 11.)[1] On November 27, 2013, Thomas K. Gipson (Plaintiff) filed this *pro se* lawsuit against Deutsche Bank National Trust Company (Deutsche Trust Co.), as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

1, Mortgage Pass Through Certificates, Series 2006-1 (the Trust); Mortgage Electronic Registration Systems, Inc. (MERS); Wells Fargo Bank, N.A. (WFB); Barrett, Daffin, Frappier, Turner & Engel, LLP (BDFTE); First NLC Financial Services, LLC (First NLC); Deutsche National Bank (Deutsche); and "America's Servicing Company" (ASC)[2] in state court.  (*See id*. at 9–37.)[3]  That same day, the state court issued a temporary restraining order to restrain all defendants from executing a foreclosure sale and forcibly removing Plaintiff from the Property.  (doc. 1-3 at 5-7.)

Plaintiff claims that he is the "rightful owner" of the Property and is currently in possession of it.  (doc. 58 at 4.)  On or about December 20, 2005, he executed a home equity note made payable to First NLC in the original principal amount of $97,600 as well as a home equity deed of trust to secure payment of the note.  (*Id*.; doc. 69-1; doc. 69-2.)  On or about January 15, 2006, ASC, as servicer for WFB, allegedly falsely informed Plaintiff that it had acquired his mortgage.  (doc. 58 at 4.)  He made loan payments to ASC from February 1, 2006 until April 1, 2012, in detrimental reliance on the "false claim."  (*Id*.)  In early 2012, he made several verbal requests to ASC and WFB for a certified copy of the original note and deed of trust to confirm that ASC and WFB had properly acquired his mortgage from First NLC.  (*Id*.)  Plaintiff claims that due to their failure to produce the requested documents, he searched for the documents himself but could not find evidence that First NLC conveyed the mortgage to ASC or WFB.  (*Id.* at 5.)

Plaintiff alleges that according to the Pooling and Servicing Agreement (PSA), the assignment of the mortgage from First NLC to "the sponsor  Morgan Stanley Morgan Capital Inc.;

---

[2]  The defendants contend that ASC is a division of WFB and not a separate legal entity.  (*See* doc. 14 at 11 n. 1.)

[3]  In July 2013, "Defendants" filed suit in the 95th District Court to obtain an order to foreclose on the Property.  (*Id.* at 7.)  On October 23, 2013, "Defendants" received a judgment to foreclose.  (*Id*.)  In November 2013, Plaintiff received a Notice of Substitute Trustee's Sale stating that the property was scheduled for a foreclosure sale on December 3, 2013.  (*Id.*)

"the assignment of mortgage from Morgan Stanley Mortgage Capital, Inc. to the depositor Morgan Stanley ABS Capital Inc.;" and a recorded assignment of the "Trust from the depositor to the trust Morgan Stanley Ixis Real Estate Capital Trust 2006-1, Mortgage Pass Through Certificates, Series 2006-1" had to have taken place prior to the June 30, 2006 closing date of the Trust. (doc. 58 at 5.) However, he contends that "Defendants" exhibited in their "lawsuit to foreclose on Plaintiff" that it was impossible to comply with their own PSA because they did not have a mortgage to securitize, assign or transfer in 2006. (*Id.*) According to Plaintiff, under "New York State Trust Law Statutes," unless an asset is transferred into a lifetime trust, it does not become trust property. (*Id.*) Additionally, "any attempt to place or assign an asset to a trust after its closing date is contrary to the trust agreement," and "[a] trustee's act that is contrary to the trust agreement is void." (*Id.*) He also contends that in order for a trust to own a mortgage, it must go through a securitization process, which is composed of three lawful assignments. (doc. 58 at 25.) He claims that the defendants only show one alleged assignment from a questionable entity, First NLC, going into a questionable trust six years after collecting payments from the "Defendant." (*Id.* at 25-26.) According to Plaintiff, the defendants are trying to evade the issue regarding the "questionable" trust because they know that they don't have any documentation to support the "transfer and securitization of a mortgage in 2006." (*Id.* at 26.) That does not "constitute a legal transfer of title or a securitization process with a chain of title." (*Id.*) "Therefore, the questionable trust is not authorized to initiate any foreclosure proceedings." (*Id.*)

Plaintiff also alleges there were no lawfully recorded assignments of his mortgage in the Dallas County Clerk's office in 2006, and no evidence on the Edgar database for the Securities Exchange Commission (SEC) that the defendants possess a securitized mortgage. (*Id.* at 5-6.)

Plaintiff contends that he verbally informed ASC and WFB that he would no longer remit any more payments until they provided him with proper evidence of WFB or Deutsche's ownership of his mortgage.  (*Id.* at 6.)  He sent at least two Qualified Written Requests (QWRs) to the defendants in early June 2012 in accordance with the Real Estate Settlement & Procedures Act (RESPA) "in an attempt to receive proof that they had lawfully, or unlawfully, acquired the mortgage from First NLC."  (*Id.*)  The defendants did send him documents in response to the QWRs, but the documents allegedly were not the requested certified copies of the note and deed of trust, and they did not contain the necessary endorsements required to show the chain of title. (*Id.*)

On June 29, 2012, MERS, as nominee for First NLC, assigned the deed of trust to Deutsche Trust Co. pursuant to an Assignment of Mortgage.  (*See* doc. 69-3.)  According to Plaintiff, this assignment was fraudulent, and it was executed and recorded by the defendants with the Dallas County Clerk's Office shortly after he sent the QWRs.  (doc. 58 at 6.)  He contends that the "fraudulent recording" occurred more than six years after the defendants claimed to have acquired his mortgage, which is contrary to the PSA.  (*Id.*)  Plaintiff contends that he obtained legal counsel to ascertain whether WFB legally acquired his mortgage, but the defendants never provided the original note, the original deed of trust, and the assignment of mortgage despite several attempts by his counsel to obtain them.  (*Id.* at 5-6.)

The third amended complaint expressly lists claims against First NLC and WFB for predatory lending and violations of the Home Ownership and Equity Protection Act (HOEPA), and against all defendants for fraud, breach of contract, mail fraud, conspiracy, racketeering, unjust enrichment, slander of title, defamation, harassment, securities fraud, unreasonable collection efforts, malicious prosecution, perjury, income tax evasion, and violations of RESPA, the Texas

Property Code, the Texas Business and Commerce Code, the Texas Debt Collection Practices Act (TDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Federal Debt Collection Practices Act (FDCPA). (*Id.* at 7-24.) Liberally construed, the third amended complaint also asserts claims for wrongful foreclosure, and violations of the Equal Credit Opportunity Act (ECOA) and the Truth in Lending Act (TILA). (*Id.* at 8-11, 16.) Plaintiff seeks actual, exemplary, treble, and statutory damages, declaratory relief, rescission of his loan, termination of the security interest in the Property, forfeiture of loan proceeds, an accounting, attorney's fees and costs, and injunctive relief to restrain WFB and Deutsche Trust Co. from selling, attempting to sell, or evicting him from, the Property. (*Id.* at 9-11, 14-15, 24, 27, 31-32.)

On December 10, 2013, WFB removed the action to federal court based on federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1.) BDFTE filed a motion to dismiss this action against it on December 23, 2014. (doc. 9.) Deutsche Trust Co., WFB, and MERS also moved to dismiss on January 17, 2014. (doc. 14.) After being granted leave, Plaintiff filed a first amended complaint on May 1, 2014, and the two motions to dismiss the original complaint were deemed moot. (docs. 24, 25.) On January 5, 2015, dismissal of the claims against Deutsche Trust Co., WFB, and MERS in Plaintiff's amended complaint was recommended for failure to state a claim upon which relief can be granted. (doc. 36.)[4] On January 16, 2015, Plaintiff filed a second amended complaint. (doc. 39.) Deutsche Trust Co., WFB, and MERS moved to dismiss this complaint on February 6, 2015. (doc. 44.) After being granted leave to file a third amended complaint as to Deutsche Trust Co., WFB, and MERS only, Plaintiff filed a third amended complaint on March 23, 2015. (doc. 58.) On April 3, 2015, Plaintiff filed a motion

---

[4] On May 4, 2015, Plaintiff's claims against BDFTE were dismissed with prejudice. (doc. 79.) On August 25, 2015, Plaintiff's claims against First NLC and Deutsche were dismissed without prejudice. (doc. 84.)

for summary judgment.  (doc. 63.)  On April 13, 2015, Deutsche Trust Co., WFB, and MERS (the Moving Defendants) moved to dismiss Plaintiff's third amended complaint.[5]  (doc. 68.)  Both the motion for summary judgment and the motion to dismiss the third amended complaint are ripe for recommendation.

## II.  MOTION TO DISMISS

Moving Defendants move to dismiss Plaintiff's third amended complaint under Rule 12 (b)(6) for failure to state a claim as a matter of law.  (doc. 68 at 16.)

### A.   __Rule 12(b)(6) Standard__

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The plaintiff's pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that

---

[5]  Moving Defendants originally filed a motion to dismiss Plaintiff's third amended complaint on March 31, 2015. (doc. 60.)  However, they filed an amended motion to dismiss on April 13, 2015, to include the appendix that had been inadvertently omitted from the initial motion.  (*See* doc. 68 at 14 n. 2.)

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th

Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the plead-

ings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224

F.3d at 499 (quotations omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d

719, 725 (5th Cir. 2003). Attachments falling under these categories may be properly considered

without converting the motion to dismiss into a motion for summary judgment. Here, Moving

Defendants attached to their motion copies of what they contend are the note, the deed of trust, and

the assignment of mortgage. (docs. 69-1, 69-2, 69-3.) These documents are referenced in Plaintiff's

complaint and are central to his theory of the case; they are therefore considered part of the

pleadings. *See Collins*, 224 F.3d at 499. Conversion of Moving Defendants' motion to dismiss into

a motion for summary judgment is unnecessary. *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d

at 205.

## B.      "Show-Me-the-Note" Theory

Moving Defendants urge dismissal of Plaintiff's claims for unreasonable collection efforts

and violations of the Texas Property Code, the Texas Business and Commerce Code, the TDCPA,

and the FDCPA because they are based on the "show-me-the-note" theory, which has been rejected

by federal courts in Texas. (doc. 68 at 19, 25, 27, 32.)

As with the first amended complaint, Plaintiff's allegations that the defendants had no

authority to foreclose because they are not the holder of the note implicates what is commonly

referred to as the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-

N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex.

July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink

signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home*

8

*Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011)

(citation and internal quotation marks omitted).   The theory has been repeatedly rejected in this

circuit.  *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-

CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (Fitzwater, C.J.) (collecting cases).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note."

*Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July

25, 2011).   Under Texas law, promissory notes and deeds of trust are distinct obligations that afford

lenders distinct remedies upon default, "the note against the borrower and the lien against the real

property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-cv, 2012 WL 3793190,

at *3 (Tex. App.–Austin Aug. 30, 2012, pet. denied) (citation omitted).   In cases where the lender

seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder

of the note by producing the original wet-ink instrument."  *Millet v. JP Morgan Chase, N.A.*, No.

SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).   By contrast,

"[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not

the underlying note." *Reardean*, 2011 WL 3268307, at *3.

The Texas Property Code allows mortgagees and mortgage servicers to conduct a non-

judicial foreclosure sale "under a power of sale conferred by a deed of trust or other contract lien."

Tex. Prop. Code Ann. § 51.002 (West 2007).   The Code defines mortgagee as "the grantee,

beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned

of record, the last person to whom the security interest has been assigned of record."  *Id.*

§ 51.0001(4)(A),(C).  It defines "mortgage servicer" as "the last person to whom a mortgagor has

been instructed by the current mortgagee to send payments for the debt secured by a security

instrument." *Id.* § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id.*

Courts have held that the Texas Property Code does not require a mortgagee to produce proof of ownership of the original note or deed of trust before conducting a non-judicial foreclosure sale. *See, e.g.*, *Bennett*, 2012 WL 2864751, at *3; *Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (citations omitted); *Cole v. Fed. Home Loan Mortg. Corp.*, No. 3:11-CV-1833-M-BK, 2012 WL 555194, at *2 (N.D. Tex. Jan. 23, 2012), *rec. adopted*, 2012 WL 556055 (N.D. Tex. Feb. 21, 2012). As the statute provides, being the "holder" of a security instrument is only one of several ways to prove mortgagee status. *See* Tex. Prop. Code § 51.0001(4)(A),(C). A mortgage servicer may also administer a non-judicial foreclosure sale on behalf of a mortgagee if the two entities enter into a servicing agreement and provide the borrower with certain disclosures. *See id.* § 51.0025. As courts have noted, however, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *rec. adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy*, 2012 WL 840909, at *10 (explaining that § 51.0025 of the Texas Property Code "contemplates that someone other than the holder of the original [security instrument] may lawfully foreclose on the security interest").

Accordingly, Plaintiff's allegation that the defendants had no right to foreclose because they were not the holder of the note cannot support any claim against the Moving Defendants as a matter of law. *See Islamic Ass'n of Desoto, Texas, Inc. v. Mortgage Electronic Registration Systems, Inc.*, No. 3:12-CV-0613, 2012 WL 2196040, at *2 (N.D.Tex. June 15, 2012).[6] To the extent that he bases

---

[6] Despite Plaintiff's claim that this is not a foreclosure prevention lawsuit, (doc. 58 at 25), his third amended complaint makes several allegations that implicate the show-me-the-note theory, (*id.* at 4-5, 16-18, 21-22).

his claims for unreasonable collection efforts and violations of the Texas Property Code, the Texas Business and Commerce Code, the TDCPA, and the FDCPA on these allegations, they are all subject to dismissal for failure to state a claim.

## C.   Plaintiff's Standing to Challenge the Assignment of the Mortgage into a Trust

Moving Defendants also urge dismissal of Plaintiff's new allegations that the assignment of the mortgage into the Trust after the closing date was a violation of the PSA.  (doc. 68 at 37-38.) They argue that Plaintiff lacks standing to contest any assignment because he has not and cannot allege that he is a party to the PSA, and he has not alleged any facts that would render any assignment void.  (*Id*. at 38.) Additionally, they contend that Texas law and not New York law governs the relationship between them and Plaintiff.  (*Id*.)

Several district courts in Texas have held that borrowers do not have standing to challenge the assignments of mortgages because they were not a party to those assignments.  *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp.2d 616, 623 (N.D.Tex. 2011).[7] Citing Texas law, however, some federal courts have recognized two exceptions:  (1) the obligor of an assigned "claim may defend [a] suit brought thereon on any ground which renders the assignment void, but ... not ... voidable," and (2) "under very limited circumstances, ... a defendant  sued on a negotiable instrument [may] assert defenses and claims held by others."  *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *4-5 (W.D. Tex. May 15, 2012) (citing *Tri-Cities Const.,*

---

[7]  *See also Abruzzo v. PNC Bank, N.A.*, No. 4:11-cv-735-Y, 2012 WL 3200871, at *2 (N.D.Tex. July 30, 2012) (holding that the "Plaintiffs [did] not have standing to ... challenge" the assignment of their mortgage from a securitization trust to the defendant, which allegedly violated the governing PSA, "because they were not parties" to the PSA); *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D.Tex. Oct. 15, 2012) ("[b]orrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments."); *Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D.Tex. June 26, 2012).

*Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.-Houston [1st Dist.] 1975, no

writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Rodriguez v. Bank of Am., N.A.*, No. SA-12-

CV-00905-DAE, 2013 WL 1773670, at *5 (W.D. Tex. Apr. 25, 2013); *Puente v. CitiMortgage, Inc.*,

No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller v. Homecomings*

*Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012).   The Fifth

Circuit has expressly adopted the first exception, stating that "in Texas... an obligor cannot defend

against an assignee's efforts to enforce [an] obligation on a ground that merely renders the

assignment voidable[8] at the election of the assignor," but an "obligor *may* defend on any ground

which renders the assignment void." *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225

(5th Cir. 2013) (citing *Tri–Cities Const., Inc.*, 523 S.W.2d at 430; *Glass v. Carpenter*, 330 S.W.2d

530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.)) (emphasis in original).   A debtor

can challenge a void assignment "because a void assignment would not pass title, and the debtor has

an interest to insure [*sic*] himself that he will not have to pay the same claim twice." *Washington*

*v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *8 (W.D. Tex. Feb. 20, 2013)

(citation omitted); *accord Tri–Cities Const., Inc.*, 523 S.W.2d at 430.   With respect to the

assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the

deed on the purported assignee while a voidable contract transfers the deed to the

assignee—including the rights contained in it—subject to the rights of the assignor to set it aside

upon proof [that] the contract was executed improperly." *Puente,* 2012 WL 4335997, at *6 n. 14

(citing *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942)); *see also Glass*, 330

---

[8]   "Examples of 'voidable' defenses include the statute of frauds, . . . fraud in the inducement, . . . lack of capacity
as a minor, . . . and mutual mistake."  *Miller*, 2012 WL 3206237, at *5; *see also* Tex. Bus. & Com. Code § 3.202(a)
(listing voidable defenses against the enforcement of a negotiable instrument).

S.W.2d at 537 (distinguishing between a void and a voidable assignment).[9]

### 1.    *Standing Under Texas Law*

The Fifth Circuit recently considered whether borrowers have standing under Texas law to challenge assignments that violated PSAs because they occurred after the PSA's closing date in *Reinagel*. 735 F.3d at 228. There, the plaintiffs argued that the assignment of their mortgage into a Deutsche Bank pooling trust violated the terms of the PSA because the assignment took place after the specified closing date in the PSA. *Id*. The Court found that the plaintiffs had no right to enforce the PSA under Texas law unless they were the PSA's intended third-party beneficiaries. *Id*. It concluded that although the plaintiffs claimed to be third-party beneficiaries, they failed to state any facts indicating that the parties to the PSA intended that benefit. *Id*. The court also held that "[E]ven assuming that the [plaintiffs] are third-party beneficiaries, the fact that the assignments violated the PSA– a separate contract – would not render the assignments void, but merely entitle the [plaintiffs to sue for breach of the PSA." *Id*.

Here, Plaintiff has not alleged that he is a party or a third-party beneficiary to the PSA or presented any facts showing that the parties to the PSA intended to benefit him. (*See generally* doc. 58.) Accordingly, even if the assignment of Plaintiff's mortgage into the Trust violated the PSA, Plaintiff lacks standing to challenge it on that basis. *See also Sigaran v. U.S. Bank Nat'l Ass'n*, No. 13-20367, 2014 WL 1688345, at *2 (5th Cir. Apr. 30, 2014)(per curiam) (holding the plaintiffs lack standing to challenge assignment of their loan to the trust on the basis that the assignment violated the PSA where they did not argue they were third-party beneficiaries and they did not present facts

---

[9]  "This rule accords with [the] principle of contract law" that a "void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced." *Rodriguez*, 2013 WL 1773670, at *5 (citing 17A C.J.S. Contracts § 169).

to lead the Court to believe the PSA intended to benefit them); *Svoboda v. Bank of America, N.A.*, No. 13-50818, 2014 WL 2547762, at *2 (5th Cir. June 6, 2014) (per curiam) (finding borrowers could not challenge the transfer of their mortgage into the trust based on alleged violations of the PSA because they did not claim they were third-party beneficiaries); *Golden v. Wells Fargo Bank, N.A.*, 557 Fed.Appx. 323, 326 (5th Cir. 2014) (per curiam)(finding plaintiffs had no right to enforce terms of PSA where they did not allege they were parties or even third-party beneficiaries to the PSA); *Martin v. Wells Fargo Bank, N.A.*, No. 3:12-cv-3695, 2013 WL 3809676, at *3 (N.D. Tex. July 23, 2013) (finding plaintiff lacked standing to challenge the assignment on the grounds that it was made in violation of the PSA where plaintiff did not allege that he was a party or a third-party beneficiary to the PSA); *Bernal v. Wilmington Finance*, No. 3:12-cv-3741, 2013 WL 2896892, at *3 (N.D.Tex. June 13, 2013) (finding plaintiffs lack standing to challenge assignment's compliance with the PSA where they had not alleged they were in privity to the PSA or third-party beneficiaries).

## 2.    *Standing Under New York Law*

Plaintiff contends that the assignments of the mortgage had to have taken place before the closing date of the Trust, which according to the PSA was June 30, 2006. (doc. 58 at 5.) Allegedly, the trustee assigned the mortgage to the Trust after the closing date, and therefore under "New York State Trust Law Statutes," the trustee's action was void. (*Id.*) Moving Defendants contend that according to the note and deed of trust, Texas law and not New York law governs their relationship with Plaintiff. (doc. 68 at 38.)

To the extent New York law does govern interpretation of the PSA, the Fifth Circuit has also considered this argument under New York law. In *Sigaran*, the Fifth Circuit noted that in order for

borrowers to challenge the assignment of their loan under New York law, the assignment must be void and not merely voidable. 2014 WL 1688345, at *2. The Court recognized that New York law provides that "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." *Id.* (quoting N.Y.Est. Powers & Trusts Law § 7-2.4). However, the Court found that New York courts treated *ultra vires* actions by trustees as voidable and capable of ratification. *Id.* (citing *Mooney v. Madden*, 193 A.D.2d 933, 933-34, 597 N.Y.S.2d 775 (1993)). In that case, it concluded that the assignment of the plaintiffs' loan after the closing date made the assignment voidable, not void, and therefore the plaintiffs did not have standing to challenge the assignment under New York law. *Id.*

After a comprehensive review of New York case law, the Western District of Texas came to the same conclusion in *Calderon v. Bank of America, N.A.*, 941 F. Supp.2d 753, 766-67 (W.D.Tex.2013). The court in that case cited to several New York authorities which "made clear that, under New York law, a trustee's unauthorized transactions may be ratified; such transactions are, accordingly, *voidable*–not void." (alterations in original). *Id.* It also acknowledged that there was tension in New York law between the line of cases it cited and N.Y.Est. Powers & Trusts Law § 7-2.4, which states that acts of trustees in contravention of the trust are void. *Id.* at 767. Finding that this tension was for New York courts to reconcile, it held that the line of cases was a sufficient basis for it to conclude that a trustee's assignment of a note to the trust, even if in violation of the PSA, could be ratified by the beneficiaries of the trust and was therefore merely voidable. *Id.*

Based on the Fifth Circuit's conclusion in *Sigaran* as well as the New York case law cited by the *Calderon* court, the Court finds that the unauthorized acts of a trustee may be ratified by the trust's beneficiaries and are voidable, not void. Accordingly, even assuming that New York law

15

governs interpretation of the PSA, Plaintiff lacks standing to challenge the assignment under New York law. *See Svoboda*, 2014 WL 2547762, at *3 (finding that "New York courts have treated *ultra vires* actions by trustees as voidable and therefore susceptible of ratification" and so the violations that allegedly took place when the plaintiffs' mortgage was transferred to the trust "would merely make such a transaction voidable, not void" under New York law), *Felder v. Countrywide Home Loans*, No. H-13-0282, 2013 WL 6805843, at *19 (S.D. Tex. Dec. 20, 2013) (finding plaintiff could not challenge assignment of mortgage into trust under New York law on the basis that it violated the PSA because courts applying New York law have treated actions by trustees as voidable rather than void); *Green v. Bank of America, N.A.*, No. H-13-1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013)  (finding plaintiff could not challenge assignments made after trust's closing date because courts applying New York law have treated actions by trustees as voidable).

Even if accepted as true for purposes of the motion, Plaintiff's allegations regarding the assignment of his mortgage into a securitization trust fail to raise a reasonable inference that the assignment was void and that he has standing to challenge it.  All of his claims are subject to dismissal to the extent they are based on these allegations.  *See Jones v. Deutsche Bank Nat. Trust Co.*, No. 3:12-cv-3929, 2013 WL 3455716, at *7 (N.D.Tex. July 9, 2013)(finding all of the plaintiffs' claims were subject to dismissal to the extent they were based on allegations that the assignment of their mortgage into a securitization trust was void); *Abruzzo*, 2012 WL 3200871, at *2 (finding plaintiffs failed to plead a plausible claim based on their challenge of the assignment of their mortgage into a securitization trust in violation of the PSA).[10]

---

[10]  Moving Defendants also argue that Plaintiff's allegations regarding the assignment of his mortgage into the Trust fail because Texas courts have consistently held that recordation is not necessary for liens, deeds, or deed of trusts to be enforceable against the parties to those instruments.  (doc. 68 at 38.) To the extent Plaintiff is alleging here that transfers of his lien must be recorded as a prerequisite to foreclosure, that allegation fails to state a viable claim.  *See*

D.      **TDCPA**

Moving Defendants seek to dismiss Plaintiff's TDCPA claim for failure to state a claim. (doc. 68 at 27.)[11]

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012). The TDCPA defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." Tex. Fin. Code Ann. § 392.001(6) (West 2006). In turn, "debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). This can include "actions taken in foreclosing [on] real property." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20, 2012). An attempt to foreclose may therefore fall within the purview of the TDCPA. *See Sanghera*, 2012 WL 555155, at *7.

   1.      *Sections 392.303(a) and 392.304(a)*

Section 392.303(a) prohibits a debt collector from using "unfair or unconscionable means

---

*Islamic Ass'n*, 2012 WL 2196040, at *2 (N.D.Tex. Jan. 16, 2013) ("[T]he ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of [the] deed of trust is either prepared or recorded.") (citation omitted).

[11]  Moving Defendants contend that Plaintiff's TDCPA claim is also based on the "show-me-the-note" theory. He alleges that because "Defendant" has provided no evidence that "they" are the holder of the note, they have no authority to collect on the note. (doc. 58 at 17.) Actions to collect on the note may include actions other than foreclosing on the Property, such as sending mortgage statements and demand letters, and making phone calls. (*See* doc. 58 at 17 ("Defendant is in violation of Section[] 392.301(8), [and therefore has] no authority to collect on the note *or* hold a substitute trustee's sale.") (*emphasis added*); *id.* at 21 (complaining of harassing phone calls); 18 (claiming the defendants sent demand letters and mortgage statements)).

that employ [certain prohibited] practices" during debt collection.  Tex. Fin. Code Ann. § 392.303(a)

(West 2005).  Section 392.304(a)  prohibits a debt collector from using "a fraudulent, deceptive, or

misleading representation that employs [certain prohibited] practices" during debt collection, or

obtaining information concerning a consumer.  Tex. Fin. Code Ann. § 392.304(a) (West 2005).

Section 392.304(a) lists 18 specific practices that violate the Act and includes a "catch-all"

provision.  *See id.* § 392.304(a)(1)–(19).  For purposes of a misrepresentation under § 392.304(a),

that party "must have made a false or misleading assertion."  *Sanghera*, 2012 WL 555155, at *9.

Plaintiff complains that "Defendant...engaged in actions to collect on the note" and that were

"fraudulent, deceptive and/or misleading representations, actionable under . . . §§ 392.303 or

392.304" because "Defendant" lacked authority to collect on the note.  (doc. 58 at 17.)  First,

Plaintiff does not identify a specific provision of §§ 392.303(a) or 392.304(a) or a particular

"prohibited practice" that Moving Defendants allegedly violated.  This failure alone warrants

dismissal of any claims under these sections.  *See Iqbal*, 556 U.S. at 678 (to survive dismissal, the

complaint must provide sufficient "factual content [to] allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged").  Plaintiff also fails to explain what

actions Moving Defendants undertook to "collect" on the note.  To the extent he implicitly refers

to any of the Moving Defendants' attempt to foreclose on the Property, his allegations fail to raise

a reasonable inference that this "action" was unconscionable, fraudulent, deceptive, or misleading

because the Moving Defendants could exercise the power of sale without producing the note.  *See*

*Martins*, 722 F.3d at 255.  Accordingly, any claims under §§ 392.303(a) and 392.304(a) fail and

should be dismissed for failure to state a claim.  *See Puente v. CitiMortgage, Inc.*, No. 3:11-CV-

2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) (dismissing TDCPA claim where the

18

plaintiffs neither pointed to specific provisions that the defendant allegedly violated, nor supplied sufficient facts to state a plausible claim for relief—other than their invalid theory that the defendant could not foreclose because it was not the holder of the note).

### 2.      Section 392.301(a)(8)

Section 392.301(a)(8) of the TDCPA provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

Here, Plaintiff argues that "Defendant is in violation" of § 392.301(a)(8) because it has "no authority to collect on the note or hold a substitute trustee's sale." (doc. 58 at 17.) This allegation cannot plausibly entitle him to relief because he does not allege any facts showing that Moving Defendants used threats or coercion in connection with any collection actions or the attempted foreclosure. *See Swim*, 2012 WL 170758, at *5 (dismissing claim under § 392.301(a)(8) because plaintiffs failed to allege, among other things, "how Defendants used threats or coercion" in connection with "foreclosing and selling the Property"). Therefore, Plaintiff fails to state a viable claim under § 392.301(a)(8). Moving Defendants' motion to dismiss Plaintiff's claim for violation of the TDCPA should be granted.[12]

### E.      FDCPA

Moving Defendants argue that Plaintiff's FDCPA claim should be dismissed because he fails to allege that WFB is a "debt collector" as defined by the Act. (doc. 68 at 32.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'"

---

[12] Moving Defendants also seek to dismiss Plaintiff's TDCPA claim because the claim cannot succeed under the economic loss doctrine. (doc. 68 at 28.) Because Plaintiff's TDCPA claim is otherwise subject to dismissal for failure to state a claim, it is unnecessary to reach this argument.

*Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)). It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing 15 U.S.C. §§ 1692e and 1692f). Debt collectors are also required to provide a proper validation notice of a consumer's rights and to refrain from engaging in collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt" within the 30 days allowed for disputing the debt. 15 U.S.C. § 1692g(a) and (b) (West 2010).

Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007)).

Plaintiff alleges that WFB filed the foreclosure action against him knowing it did not possess the original note, and that the foreclosure proceedings were initiated "without having proved that

Plaintiff was actually in default of the loan." (doc. 58 at 22.)  These bare and conclusory allegations fail to show that WFB or any of the other Moving Defendants were either engaged "in any business the principal purpose of which [was] the collection of any debts" or that they "regularly collected or attempted to collect ... debts."  *See* 15 U.S.C. § 1692a(6).  Without more, these allegations fail to meet the *Iqbal* pleading standards.  Plaintiff's FDCPA claim should also be dismissed.

## F.   <u>Harassment/Unreasonable Collection Efforts</u>

Moving Defendants contend that there is no actionable claim for harassment in Texas outside of the employment and criminal law context.  (doc. 68 at 32.)  Instead, "harassment" is an element of a properly pled claim for unreasonable collection efforts, which Plaintiff brought as a separate claim.  (*Id.*) They contend that Plaintiff's unreasonable collection efforts and harassment claims should be dismissed because he fails to make any allegations that could support harassment or malicious intent.  (*Id.* at 32, 34.)

There does not appear to be any civil cause of action for harassment of the type alleged by Plaintiff.  *See Hutcherson v. JPMorgan Chase Bank, N.A.*, No. 2:11-CV-154, 2012 WL 37393, at *4 (S.D. Miss. Jan. 6, 2012)(granting motion to dismiss harassment claim where "[p]laintiff failed to cite any ... law regarding a cause of action for harassment of the sort alleged" by plaintiff).  His allegations are properly construed as a claim for unreasonable collection efforts.  Although the intentional tort of "unreasonable collection efforts" does not have a precise definition, courts in Texas generally define it as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  *Sanghera*, 2012 WL 555155,

at *6 (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).[13]

Generally, "damages for mental anguish unaccompanied by physical injury are recoverable . . . if at all, only as a result of the most egregious abuses in debt collection." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982). "Texas courts generally reserve this tort for actual collection efforts, such as telephone calls or approaching the debtor, that overstep the bounds of routine collection methods through excessive harassment." *Islamic Ass'n of Desoto, Tex., Inc. v. Mortg. Elec. Registration Sys., Inc.*, No. 3:12-CV-613-D, 2013 WL 169229, at *5 (N.D.Tex. Jan. 16, 2013)(citing *EMC Mortg.*, 252 S.W.3d at 864-65); *see Enis v. Bank of America*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *5 (N.D.Tex. Oct. 3, 2012) (finding plaintiff stated a claim in tort for unreasonable collection efforts where defendant made "harassing" phone calls to plaintiff "repeatedly all day long every day and as late as 11:00 at night"); *Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ.App. 1968, writ ref'd n.r.e.)(upholding finding of unreasonable collection efforts where debt collector called plaintiff five times in one night and threatened personal violence once).

Plaintiff alleges that "Defendant" constantly called him from May 2012 until October 2012, claiming to be the legal holder of the note and demanding payment on the note. (doc. 58 at 21.) He contends that the phone calls happened several times per month, that many of the phone calls were made early in the morning or late at night, and that the calls woke him up from his sleep and were very disturbing to him. (*Id.*) Plaintiff also contends that the defendants sent him demand letters, mortgage statements, and the notice of foreclosure sale. (*Id.* at 22.) He fails to allege how

---

[13]   The Fifth Circuit has noted that "the Texas Supreme Court has never delineated a standard for this tort," and it has upheld the standard set out in *Jones*. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204–05 (5th Cir. 2012).

often the defendants sent him demand letters and mortgage statements, and he alleges that the defendants only sent him *the* notice of foreclose sale.  Even viewed in the light most favorable to him, his allegations of several phone calls and mailings *per month* fail to support a plausible claim of excessive harassment outside the bounds of routine collection methods.  *See  Enis*, 2012 WL 4741073, at *5; *Pioneer Fin. & Thrift Corp.*, 426 S.W.2d at 319.  They are also insufficient to show the requisite intent, since he fails to allege that "Defendant's" actions were intentional, or that any of the defendants attempted to inflict mental anguish and bodily harm upon him.  *See Jones*, 252 S.W.3d at 868; *Lucas v. Ocwen Home Loan Servicing*, No. 3:13-CV-1057-G, 2013 WL 6620856, at *14 (N.D. Tex. Dec. 16, 2013); *Watson v. CitiMortgage*, 814 F. Supp.2d 726, 734 (E.D.Tex. 2011).  Accordingly, Moving Defendants' motion to dismiss Plaintiff's harassment and unreasonable collection efforts claims should be granted.[14]

## G.    TILA

Plaintiff's third amended complaint can be construed as asserting a claim under TILA.

### 1.    *Right of Rescission*

Plaintiff's third amended complaint alleges that First NLC and WFB violated TILA by failing to provide him with notice of his right of rescission and the necessary forms to enable him to exercise it. (*See* doc. 58 at 9.)  He seeks a loan rescission pursuant to § 1635(a).  (*See id.*)  Moving Defendants seek to dismiss this claim to the extent it is pleaded.  (*See* doc. 68 n. 52.)

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  *Schieroni v. Deutsche Bank Nat. Trust Co.*,

---

[14] As addressed above, Moving Defendants also seek to dismiss Plaintiff's claim for unreasonable collection efforts because it is based on the invalid "show-me-the-note" theory.  They also seek to dismiss Plaintiff's claim because it is barred by the economic loss doctrine.  (doc. 68 at 34.)  Because Plaintiff's unreasonable collection efforts claim is otherwise subject to dismissal, it is unnecessary to reach this claim.

No. CIV.A. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted); *see also* 15 U.S.C. § 1601; 12 C.F.R. § 226.1(b). In certain credit transactions involving a lien on the borrower's principal dwelling, the borrower has "the right to rescind the transaction until midnight of the third business day following [its] consummation." 15 U.S.C. § 1635(a) (West 2011); 12 C.F.R. § 226.23(a). The creditor must disclose this right to the borrower and provide him with the appropriate forms to enable him to exercise it. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b).

TILA expressly provides that the right of rescission does not apply to residential mortgage transactions. 15 U.S.C. § 1635(e)(1); *Green v. Bank of America, N.A.*, No. H-13-1092, 2013 WL 3937070, at *5 (S.D.Tex. July 30, 2013); *Harris v. First Franklin Financial Corp.*, No. 4:09-3698, 2010 WL 4226449, at *4 (S.D.Tex. Oct. 20, 2010). A residential mortgage transaction is "a transaction in which a mortgage [or] deed of trust ... is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *Id*. § 1602(w); *Green*, 2013 WL 3937070, at *5, *Harris*, 2010 WL 4226449, at *4. Because Plaintiff's mortgage is a residential mortgage, his right of rescission claim under TILA necessarily fails.

Even if the right of rescission was applicable to residential mortgages, Plaintiff's claim would be barred by limitations. The limitations period for a right of rescission claim under TILA is "three years after the date of the consummation of the transaction ... notwithstanding the fact that the information and forms required under [§ 1635(a)] or any other disclosures ... have not been delivered to the obligor." 15 U.S.C. § 1635(f). In *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998), the Supreme Court held that TILA "permits no federal right to rescind ... after the 3-year period of § 1635(f) has run." Accordingly, courts have held that § 1635(f) "mirrors a typical statute of repose" in that it absolutely bars rescission claims filed more than three years after the loan

24

transaction is consummated.  *See Renfrow v. CTX Mortg. Co.*, LLC, No. 3:11-CV-3132-L, 2012 WL

3582752, at *5 (N.D. Tex. Aug. 20, 2012) (collecting cases).  Because Plaintiff's credit transaction

was consummated on December 20, 2005, any right of rescission violation occurred on that date.

*See Val-Com Acquisitions Trust v. Bank of Am.*, N.A., No. 3:10-CV-01965-M, 2011 WL 2312284,

at *2 (N.D. Tex. June 9, 2011); *see also* 15 U.S.C. §§ 1635(a).  Accordingly, the limitations period

for his right of rescission claim expired on December 20, 2008.

Plaintiff argues in his response that the doctrine of equitable tolling saves his TILA claim.

(doc. 72 at 12-14.)  Because § 1635(f) completely bars any rescission claim filed after the three-year

limitations period has run, equitable tolling does not apply to Plaintiff's claim for rescission as a

matter of law.  *See Beach*, 523 U.S. at 419; *Lowery v. Capital One Mortg.*, 429 F. App'x 377, 378

(5th Cir. 2011) (per curiam) (citing *Beach*); *Renfrow*, 2012 WL 3582752, at *5.

### 2. *Nondisclosure Claim*

Plaintiff's third amended complaint states that First NLC and WFB committed a

nondisclosure violation by failing to provide or inadequately providing TILA disclosures regarding

material elements of his loan, including matters relating to closing costs and fees.[15]  (*See* doc. 58 at

9, 11.)  He appears to seek $2,000 in statutory damages pursuant to § 1640(a). (*See id.* at 10-11.)

Both TILA and Regulation Z, which was issued by the Federal Reserve Board to implement

TILA, require creditors to make numerous disclosures in a credit transaction, including the amount

financed, the finance charge, the total sale price, and information regarding debt cancellation.  *See*

---

[15]  Although Moving Defendants did not specifically address this claim, the Court may *sua sponte* dismiss it on its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiff has notice and an opportunity to respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides sufficient notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08-cv-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

15 U.S.C. § 1639(a); 12 C.F.R. §§ 226.1(a), 226.17–18.  "Concluding a credit transaction without making the required disclosures constitutes a TILA nondisclosure violation," which occurs "when the transaction is consummated." *Val-Com,* 2011 WL 2312284, at *2 (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)).  TILA authorizes private suits and allows recovery of statutory damages to ensure proper disclosure and remedy nondisclosure violations.  *See* 15 U.S.C. § 1640(a)(2)(A).

Plaintiff fails to allege the particular provisions of TILA that First NLC and WFB allegedly violated.  He also fails to make any factual allegations regarding the particular items that were required to be disclosed to him that were not disclosed.  He has therefore failed to state a plausible claim for relief based on the alleged nondisclosure violations. *See Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, at *6 (N.D.Tex. May 3, 2013)(finding the plaintiffs failed to state a claim under TILA where the court was unable to determine from the plaintiff's allegations how the defendant violated TILA and where the plaintiffs provided no details regarding the particular items that were not disclosed to them or the provision of TILA that the defendant violated); *Val-com*, 2011 WL 2312284, at *3 (finding that plaintiffs have not shown that the alleged violation gave rise to a viable claim for relief where the plaintiffs failed to identify the provisions of TILA which were allegedly violated through nondisclosure or procedural failures).

Additionally, Plaintiff's claim is barred by limitations. The limitations period for a statutory damages claim based on a nondisclosure violation is one year.  *See* 15 U.S.C. § 1640(e); *Renfrow*, 2012 WL 3582752, at *3.  Because "nondisclosure is not a continuing violation for purposes of the statute of limitations," this one-year period begins to run on the date the loan transaction is consummated.  *Moor*, 784 F.2d at 633; *see also* 15 U.S.C. § 1640(e) (providing that an action for

statutory damages must be brought within one year "from the date of the occurrence of the violation").  Given that Plaintiff's credit transaction was consummated on December 20, 2005, any nondisclosure violation occurred on that date.  *See Val-Com*, 2011 WL 2312284, at *2; *see also* 15 U.S.C. § 1640(e).  Accordingly, the limitations period for his statutory damages claim expired on December 20, 2006.

### 3.    *Equitable Tolling*

Plaintiff argues in his response that his TILA claim is not time-barred based on the doctrine of equitable tolling.  (doc. 72 at 12-14.)  He also contends that he relied on First NLC's fraudulent misrepresentations to his detriment, and he did not discover the fraudulent concealment until after the statute of limitations expired.  (*Id*. at 12.)[16]

The Fifth Circuit has not yet specifically determined whether equitable tolling applies to claims for statutory damages under § 1640(a)(2)(A) based on nondisclosure violations.  In *Moor,* the Court generally stated that "[t]o clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct."  *Moor*, 784 F.2d at 633.  In that case, it held that the plaintiff could not allege that the defendant concealed material facts because "[t]he

---

[16] Plaintiff's new allegations in his response are not part of the pleadings to be considered for purposes of the motion to dismiss.  *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, * 4 n. 3 (N.D. Tex. Aug. 15, 2014); *see also Renfrow*, 2012 WL 3582752, at*4 (finding plaintiffs' allegations were insufficient for the court to determine whether equitable tolling was warranted where they raised equitable tolling for the first time in their response to the defendant's motion to dismiss); *Cutrera v. Board of Supervisors,* 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990).  He has not sought or been granted leave to amend his third amended complaint to add these allegations, and he has not shown that Moving Defendants consented to an amendment.  *See* Fed. R. Civ. P. 15(a)(2).  Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend his complaint.  *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

causative fact was [the defendant's] failure to disclose the required information when the loan was concluded," and the plaintiff "knew or should have known of this failure as of that date." *Id.* at 633–34.

Relying on *Moor*, district courts in this circuit have held that even if equitable tolling applies to the one-year statute of limitations provided by § 1640(e) of TILA, a plaintiff must allege and ultimately show other wrongful conduct by part of the defendant beyond the nondisclosure itself to obtain relief. *See, e.g.*, *Renfrow*, 2012 WL 3582752, at *4 (holding that "a mere nondisclosure does not provide sufficient grounds for tolling the statute of limitations"); *see also Val-Com Acquisitions Trust v. Citimortgage, Inc.*, No. 4:10-CV-567-A, 2011 WL 825096, at *3 (N.D. Tex. Mar. 3, 2011) (denying the plaintiffs' request for equitable tolling with respect to their nondisclosure claim because they "neither alleged, nor adduced evidence of, any conduct by [the] defendant of the type contemplated by the Fifth Circuit [in *Moor*] to warrant tolling"); *Misczak v. Chase Home Fin., LLC*, No. 4:10-CV-739-Y, 2011 WL 145263, at *2 (N.D. Tex. Jan. 18, 2011), *aff'd sub nom. Misczak v. Chase Home Fin., L.L.C.*, 444 F. App'x 35 (5th Cir. 2011) (holding that the plaintiffs could not invoke equitable tolling with respect to their nondisclosure claim because they "wholly fail[ed] to allege any facts suggesting that [the defendants] purposefully concealed anything from them"); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 478 (S.D. Tex. 2000) (explaining that "fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled").

Even liberally construing Plaintiff's new allegations in his response as an amendment to his third amended complaint, he has failed to state a plausible claim for the application of equitable tolling. First, he clarifies in his response that his TILA claims are based on *First NLC's* failure to

provide the required disclosures, not that of Moving Defendants. (*See* doc. 72 at 12.) Additionally, Plaintiff fails to allege any fact suggesting that Moving Defendants purposefully or fraudulently concealed anything from him. *See Garcia*, 2013 WL 1858195, at *5. Finally, any nondisclosure violation occurred on the date Plaintiff's loan transaction was consummated, and he should have known of it as of that date. *See Moor*, 784 F.2d at 633–34. Accordingly, he cannot invoke equitable tolling to obtain relief regarding the nondisclosure violation from the statute of limitations. *See Val-Com*, 2011 WL 825096, at *3; *Misczak*, 2011 WL 145263, at *2.

It is apparent from the face of the third amended complaint that Plaintiff's rescission and nondisclosure claims are time-barred, and he cannot obtain equitable relief. Plaintiff's right of rescission claim under TILA should be dismissed for failure to state a claim, and his nondisclosure claim under TILA should be *sua sponte* dismissed for failure to state a claim.

## H.   HOEPA

Moving Defendants seek to dismiss Plaintiff's HOEPA claim based on the statute of limitations.[17] (doc. 68 at 21.)

Congress passed HOEPA to augment TILA by raising the disclosure requirements for certain types of loans made at higher interest rates or with excessive costs and fees. 15 U.S.C. § 1639(a); 15 U.S.C. § 1602(aa)(1); *Smith v. Nat'l City Mortg*., No. A-09-cv-881LY, 2010 WL 3338537, at *7 (W.D.Tex. Aug. 23, 2010). Section 1639(a) requires creditors to provide disclosures in addition to other disclosures required under 15 U.S.C. §§1601 *et seq*., for those mortgages referenced in 15 U.S.C. §1602(aa). Disclosures required under § 1639 must be given at least three business days

---

[17]   This affirmative defense may be considered for purposes of a Rule 12(b)(6) motion if the facts giving rise to it "appear[] on the face of the complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

prior to consummation of the transaction. 15 U.S.C. § 1639(b)(1). There is a three-year statute of limitations for claims asserted under 15 U.S.C. § 1639. 15 U.S.C. §1640(e).

Plaintiff alleges that the "December 20, 2005[] loan transaction with Defendants [was] a high rate mortgage within the meaning of 15 U.S.C. § 1602(aa)(1)(B)..." (doc. 58 at 10.) He contends that because the loan met the statutory definition of a high rate mortgage, it was subject to the additional disclosure requirements imposed by HOEPA under 15 U.S.C. § 1639(a). (*Id.*) He claims that the additional disclosures must be provided three days in advance of the "consummation of the transaction pursuant to 15 U.S.C. § 1639(b)," but the defendants did not comply with "HOEPA and Section 32." (*Id.* at 11.) He also claims that the defendants' failure to provide him with accurate and timely HOEPA disclosures constitutes a "material" disclosure violation under "TILA, 15 U.S.C. § 1602(u)(as amended), Regulation Z § 226.23 (as amended)" (*Id.*)

Plaintiff's credit transaction was consummated in December 2005, so he was required to file an action for violation of § 1639(a) by December 2008. *See* 15 U.S.C. § 1640(e). Because he did not file this lawsuit until November 2013, his HOEPA claim is time-barred.[18] Moving Defendants' motion to dismiss the HOEPA claim should be granted.[19]

## I.   **Fraud**

Moving Defendants seek to dismiss Plaintiff's fraud claim on grounds that his conclusory allegations fail to state a claim or meet the heightened Fed. R. Civ. P. 9(b) standard. (doc. 68 at 23.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation

---

[18] Plaintiff also argues in his response that his HOEPA claim is not time-barred due to equitable tolling. (doc. 72 at 12, 14.) Equitable tolling does not apply to this claim for the same reasons it does not apply to his TILA claim.

[19] Moving Defendants also argue that this claim should be dismissed because Plaintiff fails to allege any facts that could lead to assignee liability for the Moving Defendants under TILA. (doc. 68 at 21.) Because Plaintiff's claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elec.*, 343 F.3d at 724.

Plaintiff alleges that the defendants unlawfully and illegally acquired a "mortgage and original promissory note, Deed of Trust or any documents giving them authority to" act as a note holder, collect monthly payments, impose forced-placed insurance, accelerate a mortgage, declare a default, and foreclose on the Property. (doc. 58 at 14-15.) They allegedly "impl[ied] that they had acquired a mortgage" on the Property, even though it was never legally conveyed to them. (*Id.* at

15.) Plaintiff also contends that the defendants falsely informed him that they acquired the mortgage in 2006. (*Id.* at 25.) As a result, he seeks to have the mortgage loan declared void and the security interest on the Property terminated, as well as actual and punitive damages, attorney's fees, and costs and "disbursements." (*Id*. at 15.)

Plaintiff's conclusory allegations do not meet the heightened pleading requirements of Rule 9(b). As noted, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. Additionally, Plaintiff fails to allege or assert any facts supporting an inference that Moving Defendants intended for him to act upon their purported misrepresentation. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) … The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in *Dorsey*). Accordingly, Moving Defendants' motion to dismiss Plaintiff's fraud claim should be granted.[20]

## J.    **Breach of Contract**

Moving Defendants urge dismissal of Plaintiff's breach of contract claim because he fails

---

[20]    Moving Defendants also argue that Plaintiff's fraud claims are barred by the "economic loss doctrine." (doc. 68 at 23-24.) They reason that the relief Plaintiff seeks is the subject matter of the note and deed of trust. (*Id.* at 24.) The equitable loss doctrine does not dispose of Plaintiff's fraud claims because courts in the Fifth Circuit have held that this rule does not apply to fraud claims. *See, e.g.*, *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 764 (N.D. Tex. 2012); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. 4:10–CV–144, 2011 WL 1627115, at *12 (E.D. Tex. Apr.7, 2011) ("The economic loss rule does not apply to fraud claims.") (collecting cases); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07–CV–111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties had an independent duty not to commit the intentional tort of fraud); *Gruber v. Deuschle*, No. A:300–CV–0017–L, 2002 WL 523957, at *7 (N.D.Tex. Apr. 5, 2002) (holding that fraudulent inducement claims were not subject to the economic loss rule under Texas law).

to plead the provisions of the contract allegedly breached. (doc. 68 at 24.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Plaintiff alleges that "Defendant" breached the deed of trust by failing to provide him with notice regarding "any assignments." (doc. 58 at 15.) He fails to identify the specific provisions of the deed of trust that Moving Defendants purportedly breached. His breach of contract claim should be dismissed for that reason. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x. 233, 238 (5th Cir. 2014) (finding plaintiffs' allegation that defendants "breached the deed of trust by deliberately or negligently accelerating the note and foreclosing on their property" failed to state a claim for breach where they failed to identify which provision of the deed of trust defendants allegedly breached); *Coleman v. Bank of America, N.A.*, No. 3:11-CV-0430-G, 2011 WL 2516169, at *1 (N.D.Tex. May 27, 2011), *rec. adopted*, 2011 WL 2516668 (N.D. Tex. June 22, 2011) (finding breach of contract claim failed where "plaintiff point[ed] to no specific provision in the Deed of Trust that was breached by defendant"). In fact, the deed of trust provides that the note or a partial interest in the note, along with the deed of trust, can be sold one or more times without prior notice. (doc. 69-2 at 10.) Even viewed in the light most favorable to Plaintiff, the third amended complaint fails to raise a reasonable inference that Moving Defendants breached a contract with him. This

claim should be dismissed.[21]

## K.     Unjust Enrichment

Moving Defendants urge dismissal of Plaintiff's claim that the defendants unjustly enriched themselves at his expense by collecting payments in excess of $61,000 for over six years (doc. 58 at 20), on grounds that there is a contract that governs the dispute.  (doc. 68 at 30.)

Numerous courts, including the Texas Supreme Court and the Fifth Circuit, have recognized claims for unjust enrichment as independent causes of action.  *See e.g., Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action.") (citation omitted).  A plaintiff may recover for unjust enrichment if the defendant "has obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).   In essence, an unjust enrichment claim "characterize[s] the result of the [defendant's] failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay."  *Coleman v. Bank of New York Mellon*, 969 F.Supp.2d 736, 753 (N.D.Tex. 2013)(citations omitted) (alterations in *Coleman*).  Nevertheless, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Merryman*, 2013 WL 497883, at *6 (citation omitted).

In this case, the deed of trust and note govern Plaintiff's mortgage payments.  Although he

---

[21]  Moving Defendants also seek to dismiss Plaintiff's breach of contract claim on the bases that it is barred by the four-year statute of limitations and Plaintiff admitted to breaching the terms of his loan. (doc. 68 at 25.) Because Plaintiff's claim is otherwise subject to dismissal, it is unnecessary to reach these arguments.

contends that he is not legally obligated to provide the defendants with the mortgage payments, Plaintiff admits that he obtained a promissory note for the principal amount of the mortgage loan as well as a deed of trust. (*See* doc. 58 at 4.)  Because an express contract governs the subject matter in this case, any claim for unjust enrichment against Moving Defendants should be dismissed. *See Bircher v. Bank of New York Mellon,* 4:12–CV–171–Y, 2012 WL 3245991, at *6 (N.D. Tex. Aug. 9, 2012) (holding that "[t]he deed of trust and note preclude[d] a cause of action against [the foreclosing] Defendants for unjust enrichment") (citations omitted); *Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-cv-1793 -M, 2014 WL 717191, at *6 (N.D. Tex. Feb. 24, 2014)(finding that the subject matter of the dispute, plaintiff's payment of the note, was expressly governed by the contract, so he could not plead a claim for unjust enrichment as a matter of law).  Moving Defendants' motion to dismiss this claim should be granted.

## L.    <u>Violation of the Texas Property Code (Wrongful Foreclosure)</u>

Moving Defendants also move to dismiss Plaintiff's claim for violations of the Texas Property Code on the basis that it creates no private cause of action.  (doc. 68 at 25.)  They argue that at best, he makes a claim for wrongful foreclosure, but the third amended complaint contains no allegations supporting any of the elements of this type of claim.  (*Id*.)

Plaintiff contends that "[d]efendant failed to give proper notice because all transfers of the lien were not recorded timely as required by Texas Law prior to the acceleration and collection action on the Note." (doc. 58 at 16.)  He also contends that the mortgagee listed on the notice of foreclosure sale is not the current holder of the original note.  (*Id*.)   These contentions may be liberally construed as stating a claim for wrongful foreclosure for failure to send the requisite notices under Chapter 51 of the Texas Property Code rather than a stand-alone claim under the Texas

Property Code.[22]

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011).

Plaintiff's allegation that "Defendant" could not issue the notices of default and sale because

---

[22]  To conduct a lawful foreclosure in Texas, a mortgagee or mortgage servicer "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law."  *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)).  "Texas law requires two primary notices in the foreclosure context: a notice of default, and a notice of sale."  *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *4 (N.D. Tex. July 12, 2012).  Prior to issuing the notice of sale, the mortgagee or mortgage servicer must provide to the debtor written notice of default and intent to accelerate, and must give the debtor an opportunity to cure the default within a minimum of 20 days.  *See* Tex. Prop. Code § 51.002(d).

it was not the current holder of the note cannot support a viable claim as a matter of law.  *See Islamic Ass'n*, 2012 WL 2196040, at *2 (finding that courts have routinely rejected the theory that only the holder of the original note has the power to initiate a foreclosure because foreclosure statutes simply do not require possession or production of original note).  Likewise, his contention that transfers of the lien must be recorded as a prerequisite to foreclosure also fails to state a viable claim as a matter of law.  *See id.* ("[T]he ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of [the] deed of trust is either prepared or recorded.") (citation omitted); *see also Bennett*, 2012 WL 2864751, at *4 (holding that the plaintiff's "assertion that [the defendant] was not entitled to foreclose or send the notice of sale because it failed to file any assignment in the real property records ... [had] no merit").  Accordingly, any wrongful foreclosure claim fails and should be dismissed.[23]

## M.   <u>Predatory Lending and Perjury</u>

Moving Defendants seek to dismiss Plaintiff's claims for predatory lending and perjury because Texas does not recognize these causes of action.  (doc. 68 at 20, 35.)

Plaintiff alleges that the defendants engaged in acts of predatory lending.  (doc. 68 at 7.)  He contends that at all relevant times, the defendants were engaged in the business of "marketing and otherwise selling and making mortgage or other loans for residential loans."  (*Id.*)  However, they failed to provide the products, services and materials represented in their advertisements.  (*Id.* at 8.)

---

[23]   Plaintiff remained in possession of the Property as of the date he filed suit, and his third amended complaint seeks injunctive relief to prevent the defendants from foreclosing on and evicting him from the Property.  (*See* doc. 58 at 27, 31.)  Any wrongful foreclosure claim therefore fails for this additional reason.  *See Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *7 (S.D. Tex. Jan. 22, 2013) (dismissing wrongful foreclosure claim where the plaintiff remained in possession of the property because "recovery under a wrongful foreclosure claim is based on the mortgagor's [lost] possession") (citing *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.)); *Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").

He contends that they induced him to obtain a mortgage loan that failed to meet his needs because he was not financially sound and had limited assets. (*Id.*) He also claims that Deutsche Trust Co. committed perjury when it stated in open court that it was legally authorized to foreclose on the Property and that the mortgage was properly securitized. (*Id.* at 23.) Similarly, he contends that the defendants committed perjury when they stated in open court that they had possession of the original note, although it is not in their possession. (*Id.* at 23-24.)

As several federal courts have noted, no Texas court has recognized the existence of a cause of action for predatory lending. *See Belanger v. BAC Home Loans Servicing, L.P.*, 839 F.Supp.2d 873, 876 (W.D.Tex. 2011) ("No Texas court has recognized an independent cause of action for 'predatory lending.'"); *Renfrow*, 2012 WL 3582752, at *9 ("No Texas Court has recognized an independent cause of action for predatory lending.")(internal citations omitted); *Smith v. Nat'l City Mortgage*, No. A-09-cv-881 LY, 2010 WL 3338537, at *13 (W.D Tex. Aug. 23, 2010)(dismissing predatory lending claim where "[p]laintiffs fail to specify which constitutional provision or statute Defendants have violated by their alleged predatory lending").

Similarly, Texas does not provide a private right of action for civil perjury. *See Grant v. CPC Logistics Inc.*, No. 3:12-CV-200-L, 2012 WL 601149, at *1(N.D. Tex. Feb. 1, 2012) (finding there is no "private right of action for civil perjury under Texas law); *Williams v. Cintas Corp.*, No. 3:07-cv-0561-M, 2007 WL 1295802, at *2 (N.D. Tex. Apr. 10, 2007), *rec. adopted*, 2007 WL 1300780 (N.D.Tex. May 2, 2007)(collecting cases finding no private right of action for perjury); *Fermin v. Conseco Direct Life Ins. Co.*, Nos. SA-98-CA-0943-NN & SA-00-CA-1063-NN, 2001 WL 685903, at *14 (W.D.Tex. May 1, 2001)(collecting Texas cases); *McCall v. Peters*, No. 3:00-cv-2247D, 2003 WL 21488211, at *11 n. 4 (N.D.Tex. May 12, 2003), *aff'd*, 108 F.App'x 862 (5th Cir.

2004)("Texas does not recognize a cause of action for civil perjury.").  Moving Defendants' motion to dismiss Plaintiff's predatory lending and perjury claims should be granted.

N.    **Conspiracy**

Moving Defendants seek to dismiss Plaintiff's conspiracy claim for failure to state a plausible claim and because it is based on his failed fraud and perjury claims.  (doc. 68 at 28-29.)

To state a claim for civil conspiracy, a plaintiff must allege facts showing: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  A plaintiff asserting such a claim must prove that the defendants conspired "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (citation and internal quotation marks omitted).  Civil conspiracy is defined as a "derivative tort" under Texas law because "a defendant's liability for conspiracy depends on participation in some underlying tort."  *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Plaintiff alleges that the defendants conspired to fraudulently foreclose on the Property by submitting fraudulent documents and "thereby committing perjury and fraud upon the Court." (doc. 58 at 18.) His claim appears to be predicated on his perjury and fraud claims, and it therefore fails along with those claims.  *See Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F.Supp.2d 828, 836 (W.D.Tex. 2013)(finding plaintiff's civil conspiracy claim was predicated primarily on his fraud claims, and it failed alongside those claims).  He also fails to provide any factual allegations in support of his claim.  He has therefore failed to state a civil conspiracy claim.  *See Anderson v. Nat'l City Mortgage*, No. 3:11-CV-1687-N, 2012 WL 612562, at *5 (N.D.Tex. Jan. 17, 2012) (finding

plaintiff failed to state a civil conspiracy claim where she failed to provide any factual allegations in support of her claim).  Moving Defendants' motion to dismiss this claim should be granted.

## O.   Mail Fraud

Moving Defendants urge dismissal of Plaintiff's mail fraud claim because there is no such private right of action.  (doc. 68 at 28.)  Plaintiff alleges that "Defendants devised and used a scheme to defraud Plaintiff of $61,000.00 over the course of several years by mailing, via the U.S. Postal Service [,] mortgage statements, correspondence, Demand letters, and the Notice of Foreclosure Sale to the Plaintiff although they knew that the property was not conveyed to them."  (doc. 58 at 18.)

Mail fraud is a criminal offense actionable under 18 U.S.C. § 1341.  *See* 18 U.S.C. § 1341. Plaintiff's claim necessarily fails because there is no private cause of action for mail fraud under 18 U.S.C. § 1341.  *See Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977)(finding no private right of action under mail fraud statute); *Morse v. Stanley*, No. 4:11-CV-230, 2012 WL 1014996, at *2 (E.D.Tex. Mar. 23, 2010)(same); *Moreno v. Curry,* No. 4:06-CV-238-Y, 2006 WL 3207984, at *2 (N.D.Tex. 2006)(same).  His mail fraud claim should therefore be dismissed.

## P.   Securities Fraud

Moving Defendants seek to dismiss Plaintiff's securities fraud claim because he failed to allege facts supporting the elements of a claim.  (doc. 68 at 34.)

The basic element of a securities fraud claim are: (i) a material representation or omission; (ii) scienter, i.e., a wrongful state of mind; (iii) a connection with the purchase or sale of a security; (iv) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (v) economic loss, 15 U.S.C. § 78u-4(b)(4); and (vi) "loss causation," *i.e.*, a causal connection between the material misrepresentation and the loss. *Magruder*

*v. Halliburton Co.*, No. 3:05-CV-1156-M, 2009 WL 854656, at \*2 (N.D.Tex. Mar. 31, 2009)(citing

*Dura Pharm., Inc. et al., v. Broudo et al.*, 544 U.S. 336, 341 (2005)).

Plaintiff alleges that the defendants have collected money and are attempting to foreclose

on behalf of an alleged trust.  (doc. 58 at 22.)  He claims that there is no evidence that his mortgage

was securitized and therefore eligible for ownership by a trust or that there was a mortgage to be

invested in by investors.  (*Id*. at 22-23)

Plaintiff fails to allege any facts that support any of the elements of a securities fraud claim.

He fails to allege that Moving Defendants made any material misrepresentation in connection with

the purchase or sale of a security, and he fails to allege any specific loss caused by a material

misrepresentation.  This claim should also be dismissed.

## Q.    **Income Tax Evasion**

Moving Defendants urge dismissal of Plaintiff's income tax evasion claim, i.e., that the

defendants are using the "illegal cover of a Trust" to collect monthly payments "without mortgage

securitized" and in order to gain tax exempt status.  (doc. 68 at 35-36.)

Income tax evasion is a criminal offense actionable under 26 U.S.C. § 7201.  *See*  26 U.S.C.

§ 7201.   Evasion of income tax requires a willful or intentional attempt to evade or defeat  taxes

or payment of taxes.  *See id; U.S. v. Phipps,* 595 F.3d 243, 247 (5th Cir. 2010).  The only two courts

that appear to have expressly considered the issue have found no private right of action for income

tax evasion.  *See Maresca v. Maresca*, No. 3:07CV720, 2007 WL 1490515, \*5 (M.D. Pa. May 21,

2007); *Lyden v. Tiger*, No. 05-4861, 2006 WL 755999, at \*4 (D.N.J. Mar. 15, 2006).  The Court

agrees that there is no such private right of action, and Moving Defendants' motion to dismiss this

claim should be granted.

R.      **Racketeering and RICO**

Moving Defendants seek to dismiss Plaintiff's racketeering and RICO claims because he

failed to plead the elements of those claims.  (doc. 68 at 29.)  In particular, he makes no allegations

of a "pattern of racketeering" activity.  (*Id.*)

   *1.      RICO*

In their simplest terms, the four subsections of the RICO Act, 18 U.S.C. § 1962, provide:

(a) a person who has received income from a pattern of racketeering activity cannot invest
that income in an enterprise;

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of
racketeering;

(c) a person who is employed by or associated with an enterprise cannot conduct the affairs
of the enterprise through a pattern of racketeering activity; and

(d) a person cannot conspire to violate subsections (a), (b), or (c).

*See Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007); *Crowe v. Henry*, 43 F.3d 198, 203 (5th

Cir. 1995).  All four subsections have three common elements: "1) a *person* who engages in 2) a

*pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control

of an *enterprise*."  *Crowe*, 43 F.3d at 204 (alteration in original).  A RICO "person" may be "any

individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. §

1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

To state a claim under any subsection, "a plaintiff must plead specific facts . . . which estab-

lish the existence of an enterprise."  *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *accord*

*State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 649-50 (N.D. Tex. 2002).  An

enterprise is defined as "any individual partnership, corporation, association, or other legal entity,

and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. §

1961(4). To establish an association-in-fact, a plaintiff must demonstrate "evidence of an ongoing organization, formal or informal, and ... evidence that various associates function as a continuing unit." *Crowe*, 43 F.3d at 205 (internal citation and quotation omitted). Continuity is a necessary attribute of an association-in-fact enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989). An association-in-fact enterprise "(i) must have an existence separate and apart from the pattern of racketeering, (ii) must be an ongoing organization[,] and (iii) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Crowe*, 43 F.3d at 205; *Delta Truck*, 855 F.2d at 243. A plaintiff must plead specific facts that establish that the association exists for purposes other than to simply commit the predicate acts. *Elliot*, 867 F.2d at 881.

Plaintiff contends that the defendants' racketeering actions, "coupled with the fact that they are foreign corporations conducting business in other states," have adversely affected interstate commerce. (doc. 58 at 19.) He has pled no facts that suggest, let alone establish, the existence of an enterprise. Even assuming for purposes of this motion that he intends to bring his claim against them as an association-in-fact enterprise, he has failed to allege any facts to support a reasonable inference that Moving Defendants are part of an ongoing organization with a hierarchical or consensual decision-making structure that has an existence separate from the pattern of racketeering. *See Crowe*, 43 F.3d at 205. Plaintiff has failed to adequately plead a RICO enterprise. *See Elliot*, 867 F.2d at 881. His RICO claim should therefore be dismissed.

### 2.    *Racketeering*

Plaintiff alleges that the defendants have "deployed a scheme to gain money through the commission of fraud [, and] they have routinely and continually acted on this scheme within the last

three years thereby creating a racket."  (doc. 58 at 19.)

"'Racketeering activity' consists of two or more predicate offenses.  *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)(quoting 18 U.S.C. § 1961).  The predicate offenses includes certain state and federal offenses enumerated in § 1961(1), including mail fraud, securities fraud, and racketeering.  *See* § 1961(1); *Word of Faith*, 90 F.3d at 121.  To assert a claim based on a "pattern of racketeering" activity, Plaintiff must plead both that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity.  *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893); *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).  "It is this factor of continuity plus relationship which combines to produce a pattern."  *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893 (emphasis in original). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc.*, 492 U.S. at 240 (citing 18 U.S.C. § 3575(e)).

Plaintiff has failed to plead facts sufficient to create a reasonable inference of a pattern of racketeering activity involving Moving Defendants.  First, although he alleges that the defendants are engaged in a scheme to gain money, he fails to specify the predicate acts that are the basis of his racketeering claim.   Assuming Plaintiff bases his racketeering claim on his mail fraud, income tax evasion or securities fraud allegations, he has failed to plead any facts suggesting that the predicate acts are related and pose a threat of continued criminal activity.  *See Word of Faith*, 90 F.3d at 122.  Moving Defendants' motion to dismiss Plaintiff's racketeering claims should be granted.

## S. **Slander of Title**

Moving Defendants seek to dismiss Plaintiff's slander of title claim because he failed to

plead the requisite elements.  (doc. 68 at 30.)

To prevail on a slander of title claim in Texas, a plaintiff must allege and prove: (1) the utterings and publishing of disparaging words; (2) the words were false; (3) the words were malicious; (4) the plaintiff sustained special damages; and (5) the plaintiff possessed an estate or interest in the property disparaged.  *Manders v. Manders*, 897 F. Supp. 972, 976 (S.D. Tex. 1995) (citations omitted).

Plaintiff contends that the defendants slandered his title by recording a fraudulent assignment of mortgage with the Dallas County Clerk's Office on June 29, 2012, "although they did not have a legal mortgage, the Original Promissory Note or the Deed of Trust." (doc. 58 at 20.)  He alleges no facts raising a reasonable inference that the assignment of mortgage was disparaging, false, or done maliciously, and he does not allege any special damages.  Moving Defendants' motion to dismiss this claim should be granted.  *Everhart*, 2013 WL 264436, at *8 (dismissing slander of title claim where plaintiff failed to allege disparaging works, maliciousness, or special damages); *see Coleman*, 969 F.Supp.2d at 752 (finding the plaintiff's slander of title claim is subject to dismissal for failure to state a claim because she "simply fails to assert any facts supporting the elements of a slander of title action").[24]

**T.    Defamation**

Moving Defendants seek to dismiss Plaintiff's defamation claim because it is preempted by 15 U.S.C. § 1681(h), and because he did not allege facts to support it.  (doc. 68 at 31.)

For a private plaintiff, the elements of a defamation claim are: (i) defendant published a

---

[24]  Moving Defendants also seek to dismiss Plaintiff's slander of title claim because it sounds in fraud and fails to meet Rule 9(b)'s heightened pleading standards.  (doc. 68 at 30.)  Because Plaintiff's claim is otherwise subject to dismissal, it is unnecessary to reach this argument.

statement; (ii) the statement was defamatory concerning the plaintiff; and (iii) defendant was negligent as to the truth of the statement. *Allison v. J.P. Morgan Chase.* No. 1:11-CV-342, 2012 WL 4633177, at *17 (E.D.Tex. Oct. 2, 2012)(citing *WFAA-TV, Inc. v. McLenore*, 978 S.W.2d 568, 571 (Tex. 1998)). "Section 15 U.S.C. § 1681h(e) [of the Fair Credit Reporting Act] bars a consumer from bringing any claim 'in the nature of defamation... with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.'" *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470-471 (5th Cir. 2006)(citing 15 U.S.C. § 1681h(e)).

Plaintiff simply contends that the defendants reported "negative information to the Credit Bureaus, posted the Notice of Foreclosure Sale in public records and damaged Plaintiff's credit thus preventing Plaintiff from acquiring ... funds." (doc. 58 at 21.) Because he fails to sufficiently state the substance of the allegedly false and defamatory statements, his defamation claim should be dismissed. *See Shaunfield v. Bank of America*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D.Tex. Apr. 24, 2011)(dismissing defamation claim where plaintiff failed to make sufficient allegations as to the substance of the allegedly defamatory statements).

Also, any claims based on statements to credit bureaus are preempted by the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681(e). He fails to allege any facts that lead to a reasonable inference that any of the Moving Defendants acted with malice or willful intent to injure him when they reported information to any credit bureaus. *See Visconti v. Bank of America*, No. 4:10-CV-532, 2012 WL 3779083, at *3 (E.D. Tex. Aug. 31, 2012) (finding that the plaintiff's defamation claim was preempted by the Fair Credit Reporting Act where he failed to allege any facts that the

46

defendant acted with malice or willful intent to injure him when they reported to various credit agencies).  Accordingly, Moving Defendants' motion to dismiss this claim should be granted.

**U.**   **Malicious Prosecution**

Moving Defendants contend that Plaintiff's malicious prosecution claim should be dismissed because he failed to set forth the elements of such a claim.  (doc. 68 at 35.)

The elements of a malicious prosecution claim are: (i) the institution or continuation of civil proceedings against the plaintiff; (ii) by or at the insistence of the defendant; (iii) malice in the commencement of the proceedings; (iv) lack of probable cause for the proceeding; (v) termination of the proceeding in plaintiff's favor; and (vi) special damages.  *Allison,* 2012 WL 4633177, at *17 (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996)).  Fundamentally, the tort of malicious prosecution "is available only to parties who were wrongly sued and seek to be made whole."  *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex. App.–Houston [14th Dist.] 1997).  Termination of a proceeding in a plaintiff's favor includes waiting for the completion of the appellate process.  *Allison*, 2012 WL 4633177, at *17.  A plaintiff must prove special damages.  *Id.* It is insufficient that the plaintiff has suffered ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, or attorney's fees.  *Lopez v. Countrywide Mortg.*, No. 2:06-116, 2008 WL 4682040, at *6 (S.D.Tex. Oct. 20, 2008).  "There must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration."  *Id.* (quoting *Texas Beef Cattle Co.*, 921 S.W.2d at 209.)

Plaintiff argues that the application for foreclosure filed by the defendants on July 22, 2013 was without merit since the defendants did not have a legal mortgage on the Property. (doc. 58 at

23.)  He also contends that there is no evidence on the SEC's Edgar database which proves that "Morgan Stanley Ixis Real Estate Capital Trust" actually acquired a securitized mortgage in 2006. (*Id.*)  Additionally, "[t]here are no securitization documents making a mortgage eligible for ownership of any mortgage."  (*Id.*)

None of Plaintiff's factual allegations support a claim that the termination of the foreclosure proceeding was in his favor, or that he incurred special damages as a result of the proceeding.  His third amended complaint acknowledges that the defendants obtained a judgment to foreclose as a result. (*See id.* at 7.)  He also acknowledges that he is still in possession of the Property.  (*Id.* at 4.) Moving Defendants' motion to dismiss the malicious prosecution claim should be granted.

## V.   <u>ECOA</u>

Plaintiff's allegations that First NLC and WFB discriminated against him based on "race, national origin, age, gender, educational background, and wealth" may be liberally construed as asserting a claim for violation of the ECOA.  (*See* doc. 58 at 8.)  He contends that these defendants "discriminated and took advantage of [him] due to his lack of knowledge of the mortgage industry," and they induced him into obtaining a mortgage loan even though they knew he would be unable to pay the note, insurance, and property taxes.  (*Id.* at 8.)

The ECOA, 15 U.S.C. § 1691, makes it unlawful for a creditor to discriminate against any applicant on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the ability to contract).  15 U.S.C.A. § 1691(a).  "For purposes of the statute, a violation occurs upon the happening of an adverse action by the creditor, i.e. the denial of the loan application.  *Curley v. JP Morgan Chase Bank, N.A.*, No. 05-1304, 2007 WL 1343793, at *4 (W.D.La. May 7, 2007).   In order to establish a prima facie case under the ECOA, a plaintiff must

show that (1) he was a member of a protected class, (2) that he qualified for credit, and (3) he was rejected. *Cox v. Phase III, Investments*, No. H-12-3500, 2013 WL 3110218, at *6 n.3 (citing *Moore v. United States Dep't of Agriculture*, 857 F.Supp. 507, 513 (W.D.La. 1994), *vacated on other grounds*, 55 F.3d 991 (5th Cir. 1995)); *see Curely*, 2007 WL 1343793, at *4 (citing *Bhandari v. First Nat. Bank of Commerce*, 808 F.2d 1082, 1100 (5th Cir. 1987)). The ECOA has a five-year statute of limitations. *See* 12 C.F.R. § 1006.16(b)(2).

Here, Plaintiff failed to allege how he was discriminated against based on race, national origin, age, gender, educational background, and wealth by WFB. Significantly, he fails to allege that he was denied credit, as required under the third element. In fact, he acknowledges that he received a loan from First NLC, and he contends that he was induced into obtaining a loan. (doc. 58 at 4, 25.) Additionally, Plaintiff's claim for violation of the ECOA is barred by the five-year statute of limitations. He obtained his loan in 2005 but did not bring suit until over seven years later. Accordingly, Plaintiff's claim for violation of the ECOA should be dismissed *sua sponte*.[25]

## W.    RESPA

Moving Defendants seek to dismiss Plaintiff's RESPA claim, which is based on his allegation that the defendants failed to make required disclosures to him, on three grounds: Moving Defendants did not originate his loan, his claim under 12 U.S.C. § 2605 is barred by limitations, and his "bald request for actual damages is insufficient." (doc. 68 at 22.)

Section 6 of RESPA imposes two notice requirements in connection with all "federally related" mortgage loans: (1) at the time of the credit application, a lender must disclose to the

---

[25] As noted, this claim may be dismissed *sua sponte* under Rule 12(b)(6) as long as Plaintiff has notice and an opportunity to respond, which the fourteen-day objection period provides. *See Carroll*, 470 F.3d at 1177; *Ratcliff*, 2008 WL 4500321, at *3 n. 1.

borrower that the loan servicing may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding"; and (2) a "transferor" and a "transferee" mortgage servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan."  12 U.S.C. § 2605(a)-(c) (West 2011).  To recover against a lender or mortgage servicer that fails to comply with these requirements, the plaintiff "must allege actual damages resulting from the alleged RESPA violation." *Bassie v. Bank of Am., N.A.*, No. 4:12-CV-00891, 2012 WL 6530482, at *5 (S.D. Tex. Dec. 13, 2012); *see also* 12 U.S.C. § 2605(f)(1)(A).  Alternatively, a court may award up to $2,000 in statutory damages if the defendant engaged in "a pattern or practice of noncompliance." *See* 12 U.S.C. § 2605(f)(1)(B); *Bassie*, 2012 WL 6530482, at *5. Any action brought pursuant to § 2605 must be brought within three years from the date of the violation.  *Haase v. Countrywide Home Loans, Inc*., 748 F.3d 624, 629 (5th Cir. 2014); *see also* 12 U.S.C. § 2614.

Section 2604 directs lenders to provide a special information booklet to borrowers to help them "understand the nature and costs of real estate settlement procedures."  12 U.S.C. §  2604(a). It provides that each lender shall give the booklet to each person for whom it prepares a loan application no later than three days after receiving the application.  *Id*. at § 2604(d).

Plaintiff complains that "Defendant" failed to disclose to him whether servicing of his loan might be "assigned, sold, or transferred to any other person at any time while the loan is outstanding" at the time he made the loan, and "Defendant" failed to notify him of the assignment, transfer, or sale of his loan.  (doc. 58 at 12.)  To the extent "Defendant" did give him notice, it failed to include the required contents of the notice pursuant to § 2605(b)(3).  (*Id*.)  He also contends that "Defendant" failed to distribute special information booklets to him in violation of § 2604.  (*Id*.) Plaintiff claims to have suffered due to "Defendant's" RESPA violations, and have been damaged

by the unlawful conduct, material misrepresentations, and negligence of "Defendant."  (*Id*. at 13.)
He seeks actual damages and statutory fees "pursuant to RESPA."  (*Id*. at 14.)

Although Plaintiff seeks actual damages as a result of "Defendant's" purported failure to
issue notice, he does not explain what actual damages he suffered.  Nor does he state that Moving
Defendants engaged in a "pattern or practice of noncompliance," thereby subjecting them to
statutory damages under § 2605(f)(1)(B).   His RESPA claim should therefore be dismissed.  *See
Kareem v. Am. Home Mortgage Servicing, Inc.*, 479 F. App'x 619, 620 (5th Cir. 2012) (finding that
the plaintiff could not recover under §§ 2605(a)-(c) because, "even if [the Court] assume[d] that he
did not receive the notice, he [did] not explain what actual damages he suffered") (citing to §§
2605(f)(1), 3500.21(f)(1)(I)).  As for Plaintiff's allegation that the "Defendant" failed to provide him
with required disclosures at the time he applied for the loan, both the record and Plaintiff's own
allegations show that First NLC originated the loan, not Moving Defendants.  (*See* docs. 58 at 4, 69-
1.)  Plaintiff therefore fails to raise a reasonable inference that Moving Defendants violated §§ 2604
and 2605(a) by failing to provide him with disclosures at the time he completed his mortgage loan
application.  Additionally, his RESPA claims under § 2605 are barred by the applicable statute of
limitations, to the extent they concern Moving Defendants' alleged failure to provide documents at
the time he applied for the loan.  First NLC made the loan to Plaintiff on December 20, 2005.  (*See*
docs 58 at 4, 69-1.)  Plaintiff filed suit on November 27, 2013, which is well over three years after
his loan was originated.  Accordingly, Moving Defendants' motion to dismiss Plaintiff's RESPA
claim should be granted.[26]

---

[26]  Moving Defendants also argue that Plaintiff's RESPA claim should be dismissed because 12 U.S.C. § 2604 does
not provide a private cause of action.  (doc. 68 at 22.)  Because Plaintiff's RESPA claim under § 2604 is otherwise
subject to dismissal, it is unnecessary to reach this argument.

X.   **Declaratory Relief**

According to Moving Defendants, Plaintiff's request for declaratory relief should be dismissed because it is based on his legally insufficient claims.  (doc. 68 at 36.)

Plaintiff's third amended complaint seeks relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 58 at 32.) "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).  Based on the removal from state court, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act.").

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The federal Declaratory Judgment Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 3:08-CV-165-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse

declaratory judgment.  *Id.*

Plaintiff seeks a declaratory judgment that "Defendant" violated RESPA.  (doc. 58 at 14.)

He also requests that the Court declare "Defendant" to be in breach of the deed of trust and declare

that it had no right to foreclose and that the acceleration of his loan and foreclosure of the Property

were wrongful.  (*Id*. at 32.)  Plaintiff's requested declarations appear to be based on his invalid

claims for violation of RESPA, breach of contract, and wrongful foreclosure.  Additionally, as

discussed above, he has failed to allege any facts giving rise to a plausible substantive claim or

suggesting a present genuine controversy between the parties.  Moving Defendants' motion to

dismiss this claim should therefore be granted.  *See Bell*, 2012 WL 568755, at *8 (denying the

plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion

that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*,

No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011), *aff'd*, 2013 WL

657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory

judgment where he had not pleaded a plausible substantive claim).

## Y.   <u>Injunctive Relief</u>

Moving Defendants seek to dismiss Plaintiff's request for injunctive relief for failure to state

a plausible underlying claim.  (doc. 68 at 36.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial

likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-

A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs.,*

*Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, Plaintiff seeks a temporary restraining order, a

temporary injunction, and a permanent injunction to prevent "Defendant," Deutsche Trust Co., and

WFB from selling or attempting to sell the Property and from evicting him from the Property.  (doc. 58 at 27, 28.)  Because dismissal of all Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3. Accordingly, Moving Defendants' motion to dismiss his request for injunctive relief should be granted.

## Z.   <u>Accounting</u>

Moving Defendants seek to dismiss Plaintiff's request for an order of accounting on grounds that his underlying claims fail, and he has not alleged sufficient facts to support the conclusion that he cannot obtain adequate relief at law.  (doc. 68 at 37.)

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011) (quoting *Brown v. Cooley Enters., Inc.*, No. 3:11-CV-0124-D, 2011 WL 2200605, at *1 (N.D.Tex. June 7, 2011). "If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues." *Watson*, 2011 WL 4526980, at *9 (citing *Shields v. Ameriquest Mortg. Co.*, No. 05-06-01647-cv, 2007 WL 3317533, at *2 (Tex. App.–Dallas 2007, no pet.)).

Here, Plaintiff requests an accounting as a remedy, so he does not need to establish any of the prerequisites for a claim for an accounting.  (*See* doc. 58 at 32.)  Because all of his claims are subject to dismissal, however, he is not entitled to this relief.  *See Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 817 (N.D. Tex. 2012) (finding that because the court dismissed all of plaintiff's causes of action, she was not entitled to relief in the form of an accounting).  Accordingly,

Moving Defendants' motion to dismiss Plaintiff's claim for accounting should be granted.

## AA.   **Attorney's Fees**

Moving Defendants seek to dismiss Plaintiff's request for attorney's fees because he has failed to state any claim on which relief could be granted.  (doc. 68 at 37.)  Plaintiff seeks reasonable and necessary attorney's fees, generally, and in connection with the majority of his claims.  (doc. 58 at 10,11, 14-15, 24, 32.)  Because he is proceeding *pro se,* Plaintiff may not recover attorney's fees. *See Danial v. Daniels*, 814 F. Supp. 2d 726, 291 (5th Cir.2006) ("Attorney's fees are not available to a non-attorney pro se litigant.") (citing *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 373 (5th Cir.1990)); *Vaksman v. C.I.R.*, 54 F.App'x 592 (5th Cir.2002) ("As a pro se litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees.").  In any event, he is not entitled to attorney's fees because he has failed to plead any viable causes of action.  *See Everhart*, 2013 WL 264436, at *10; *Avila v. Mortgage Electronic Registration System, Inc.*, No. 4:12-CV-830, 2012 WL 6055298, at *7 (S.D.Tex. Dec. 5, 2012).  Moving Defendants' motion to dismiss his request for attorney's fees should be granted.

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff was granted leave to file a second amended complaint regarding his claims against Moving Defendants after dismissal of his prior amended complaint was recommended for failure to state a claim. (*See* doc. 36 at 49-50.) He was then granted leave to file a third amended complaint as to Moving Defendants in order to add additional facts to support his claims and seek to clarify his arguments. (doc. 57.) His additional theory regarding the late assignment of his mortgage into a securitization trust is simply invalid. It therefore appears that he has alleged his best case.[27]

## IV.  RECOMMENDATION

Plaintiff's motion for summary judgment should be **DENIED as moot**. Moving Defendants' motion to dismiss should be **GRANTED,** and all Plaintiff's claims against them should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**SO RECOMMENDED** on this 27th day of October, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[27]  Because Moving Defendants' motion to dismiss all of Plaintiffs' claims against them for failure to state a claim should be granted and all other defendants have been dismissed from the case, Plaintiff's motion for summary judgment as to his claims should be **DENIED as moot**.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

57